## KENDRICK *vs.* GREGORY & *al.*

The condition of a debtor's bond for the liberty of the yard, if not previously broken, is saved as soon as he is lawfully admitted to the poor debtor's oath.

The certificate of the oath is intended merely as a notice to the prison keeper of what has been done, that he may set the debtor at liberty if in his custody; but he may do this upon any other satisfactory information of the fact, taking upon himself the peril of proving it.

THIS was an action of debt on a bond given for the enlargement of *Gregory*, the principal defendant, who was committed to gaol on an execution in favor of the plaintiff.

Kendrick *v.* Gregory & *al.*

At the trial in the court below, it appeared that the debtor after his commitment, had caused the plaintiff to be duly notified of his intention to take the poor debtor's oath, which he afterwards took, in the forms of law, before two Justices of the *quorum*, the gaoler being present; but the certificate of his having taken the oath, though made out and signed, was withheld by the Justices, till he should pay their fees; which he did not pay, and therefore did not receive the certificate, till after the commencement of this action. Having thus taken the oath, he went beyond the prison limits; for which act, as a breach of the bond, this action was brought. When the plaintiff's attorney called on the gaolor for the bond, he was informed that the oath had been administered.

Upon this evidence *Whitman C. J.* ruled that the debtor had not been lawfully discharged, being of opinion that the delivery of the certificate was essential to the completion of the proceedings; and directed the jury to find for the plaintiff; to which the defendants excepted.

*Gilman* argued in support of the exceptions.

*Kent, e contra,* contended that the discharge was not complete till all the solemnities of the law were observed; one, and the most material of which, was the official certificate, under the hands and seals of the magistrates, delivered to the gaoler. And he likened the case, in this particular, to that of one excused from military duty upon a certificate presented to the captain; as in *Dole v. Allen,* 4 *Greenl.* 527, and to that of a bankrupt, not discharged till his certificate is obtained. *Whitney v. Crafts,* 10 *Mass.* 23.

PARRIS J. delivered the opinion of the Court at the *June* term the following year.

The laws of this state still recognize the rights of the creditor to resort to imprisonment of the person of the debtor, as one of the means of enforcing the payment of his debt. Such are the various stratagems to which the dishonest will resort to secrete their property from attachment, and defraud honest creditors, that the

Legislature has not deemed it an unjust infringement of personal liberty, under such circumstances, to permit the body of the debtor to be holden until he yields up his secreted property, to be applied in fulfilment of his voluntary stipulations.

But it is not the policy of our laws to inflict imprisonment upon the debtor as a punishment for his poverty, or for having heedlessly or even fraudulently contracted debts which he is unable to discharge. Whatever of restraint may be authorized, is upon the presumption that the debtor, having received an equivalent for the debt, which he has contracted, has estate wherewith to discharge it, but that he withholds his property by concealment, or has fraudulently conveyed it, for the purpose of securing it to his own use.

If he yields it up, the object of the law is answered. If he remove the presumption of property by shewing that he has none, the purpose for which restraint is permitted being unattainable, the law permits him to be holden no longer. The mode of establishing this fact is prescribed by statute. It can only be done before two Justices of the quorum. The parties interested are to be examined and heard; evidence is to be produced by the debtor, and by the creditor, if he think proper; a judgment is to be entered in due form as in other cases, and the whole proceedings to be recorded by one of the Justices composing the court of examination.

In the case before us, all this appears to have been done. The Justices, after such investigation as they thought proper to make, decided in the words of the statute, that, in their opinion, the debtor had not estate real or personal sufficient to support himself in prison, except the goods and chattels by law exempted from attachment and execution, and that he had not conveyed or concealed his estate with design to secure the same to his own use, or to defraud his creditors, and they thereupon administered to him the oath prescribed by the statute. Every thing of a substantial character, that the law requires, had been done to entitle the debtor to a discharge. If he be in the immediate custody of the prison keeper, as he actually is, unless liberated on bail, it is necessary that the keeper have knowledge of the proceedings, before he can be re-

Kendrick *v.* Gregory & *al.*

quired " to set such prisoner at liberty." The statute has there-
fore given a form in which the Justices are to certify the facts to
the prison keeper ; and unless such certificate is produced, he is
not bound to liberate the prisoner. It is evidence which he has a
right to require, as the most convenient and direct; and without
which the debtor would have no remedy against the keeper for re-
fusing to set him at liberty.

But does it follow that the gaoler may not lawfully act upon other
evidence equally satisfactory ? What is the foundation of the dis-
charge? Is it the certificate of the Justices, or is it the fact which
they certify, as having been ascertained and adjudicated by them ?
Is it the form, or is it the substance upon which is to depend the
decision of a question involving personal liberty ?

If this debtor had not been liberated, but was now before us on
*habeas corpus,* and we were called upon to decide upon his rights,
could we hesitate to discharge him upon the production of the rec-
ord of the Justices, showing, that, after examination, they adjudg-
ed him, in this case, a proper person to take the poor debtor's oath,
which oath they actually administered. That record a *Subpœna
duces tecum* would bring forth.

But in this case the debtor, having the liberty of the yard, was
not confined in the prison, nor was he in the custody of the gaoler,
and the language of the statute; which requires the gaoler " to set
the prisoner at liberty" has no applicability to his case. The con-
dition of the bond is; that the debtor will not depart without the ex-
terior bounds of the gaol yard until lawfully discharged. The
words " set at liberty" are not used in this connexion. The
prisoner is already set at liberty from the lawful restraint of the
gaol keeper, and consequently, cannot, by him, be set at liberty
again. Having given bond for the liberties of the yard, he may go
wherever and whenever he pleases beyond the prison limits, with-
out being amenable to the gaoler, and any further restraint on the
part of that officer would be a trespass.

What act of the gaoler then is necessary to a " discharge accor-
ding to law" of a debtor having the liberties of the gaol yard ?

4

The examination has been had; the creditor has had opportu-
nity to oppose by evidence, and by interrogatories to the debtor;
the adjudication has been made by the Justices; the oath adminis-
tered and the proper entries and records made up, and all this in
the presence of the gaoler. And will it be said that, having wit-
nessed all these proceedings, he may not enter on his kalendar the
fact that they actually did take place; and if he make the entry
conformably to the fact, will it not amount to a discharge? What
more could he do upon the production of the certificate itself?
That gives him no command to set at liberty? neither does it pur-
port, of itself, to be a discharge. It is a mere recital of what has
been done. True if having released the debtor from close impris-
onment, he had made the entry without the certificate, he would
have done so at the peril of being able to prove the facts of which
the certificate would be plenary evidence. If he produced the
certificate that would be conclusive proof of his authority to set at
liberty, beyond which he would not be required to go; and if that
be proof, shall not the original record itself, upon which the certifi-
cate is founded, be of equal force?

For what purpose is the certificate made except to notify the
gaoler of the facts contained in the record; and if he have person-
al knowledge of those facts, derived from his own observation, is
not the object of the law answered? If he waive the production of
the certificate, who is injured or endangered? Surely not the cred-
itor. If the examination has been had, the adjudication made, the
oath administered, and the record of the proceedings and judg-
ment entered up in due form, the object of the law, so far as the
creditor is interested, has been fully answered. The certificate
would not be competent evidence for him in any prosecution that
he might institute against the debtor, whether by indictment for
perjury, or any other form. It seems to be intended merely as a
notice to the prison keeper of what has been done, that he may
set the debtor at liberty, if he be in his custody; and it is mani-
fest from the phraseology of the statute providing for the certificate,
as well as the form of the instrument itself, that it refers more par-

Kendrick *v.* Gregory & *al.*

ticularly, if not exclusively, to cases where the debtor is in close confinement. The language is this, " which oath or affirmation " being administered by the said Justices to, and taken by such pris- " oner, and a certificate thereof made under the hands and seals " of the Justices administering the same, to such gaoler or prison " keeper, he shall thereupon set such prisoner at liberty, if he " is committed for no other cause, and the body of such prison- " er shall not be held in prison any longer upon such execution." *Stat.* 182, *ch.* 209, *sec.* 15, latter clause.

But whether it does or does not embrace the case of an imprisoned debtor liberated on bond, we think that upon such proceedings as were had in this case, of which the prison keeper was fully informed, having been present at the examination and decision of the Justices and the administering the oath, he might safely enter the facts in his kalendar, and do whatever was necessary to be done by him to discharge the debtor, relying upon the record of the Justices as his authority ; and that the proceedings of the Justices may be proved by their record, which the statute requires them to keep, as well as by a certificate founded on that record.

*The exceptions are sustained.*